**Tyrone and Marlene BLAIR, Plaintiffs,**

v.

**NORWEGIAN CARIBBEAN LINES, A/S, et al., Defendants.**

**Civ. A. No. 84–2729.**

United States District Court, District of Columbia.

Feb. 20, 1985.

Barbara A. Thompson, Washington, D.C., for plaintiffs.

John H. West, III and Pamela J. White, Washington, D.C., for defendant Norwegian Caribbean Lines.

James J. Tansey and Debbie S. Kessler, Washington, D.C., for defendant Federated Intern. Travel.

## MEMORANDUM

GASCH, District Judge.

### I. BACKGROUND

Plaintiffs Tyrone and Marlene Blair, residents of the District of Columbia at the time this litigation was filed, have filed this diversity action for breach of contract, negligence, fraudulent misrepresentation, negligent misrepresentation, intentional infliction of emotional distress, and unjust enrichment against two defendants: a) Federated International Travel d/b/a A AAABCO Cruise Center ("A AAABCO"), a Florida corporation; and b) Norwegian Caribbean Lines, A/S ("NCL"), a Norwegian corporation headquartered in Florida.

Plaintiffs' claims as set out in the complaint center on their experiences in attempting to take a one-week cruise on NCL's "M/S Skyward" from Miami on July 1, 1984. Plaintiffs claim to have reserved an outside room with twin beds by phone call to A AAABCO after seeing an NCL advertisement that purported to show a "[t]ypical twinbed outside stateroom" on the ship in *Cruise & Travel Magazine.* Complaint ¶ 6.[1] Plaintiffs further maintain that they flew to Miami from Washington National Airport to board the Skyward only to learn that the room to which they had been assigned had a double bed instead of two twin beds. *Id.* ¶¶ 17, 20. Plaintiffs also claim the room was deficient in other respects with only sixteen inches of space between the bed and the cabin wall; missing molding along the walls; missing veneer on the bureau drawers; and a stained bedspread. *Id.* ¶¶ 20–21.

Plaintiffs claim that they discussed these grievances with the ship's dock supervisor but were unable to obtain relief. *Id.* ¶¶ 23–35. They therefore chose not to board the ship and instead stayed overnight to seek a refund from A AAABCO. Neither NCL nor A AAABCO has given plaintiffs any refund to date. Complaint ¶ 40.

Defendants NCL and A AAABCO have filed motions to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.[2]

---

1. According to the complaint, plaintiffs saw an advertisement depicting A AAABCO as a "cruise center" through which cruises could be obtained in the same issue of *Cruise & Travel Magazine.* Complaint ¶ 8.

2. The Court on November 14, 1984 issued an order granting plaintiffs' motion for limited discovery of defendant NCL regarding the basis for jurisdiction. Plaintiffs did not seek such discovery with regard to defendant A AAABCO.

   Defendant NCL has also sought dismissal in its motion by virtue of its claim that, as a Norwegian corporation, it is not subject to service of process in this Court as well as the argument that venue is not proper here with regard to NCL. However, NCL did not address

## II. DISCUSSION

The facts on which the parties rely with regard to the question of jurisdiction over these defendants are not in dispute. Plaintiffs purchased the cruise tickets in question after reading advertisements for NCL and A AAABCO in *Cruise & Travel Magazine*. Plaintiffs then telephoned the "A AAABCO Cruise Center" in Florida from their home in Washington to make their reservations. All other interactions between plaintiffs and defendants occurred in Florida at the Skyward.

Neither of the defendants in this case is incorporated in the District of Columbia or registered to do business here. Neither has a place of business in the District of Columbia.

Plaintiffs base their claim of personal jurisdiction as to both defendants on subsections (a)(1) and (4) of the District of Columbia long arm statute which provide:

A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's:

(1) transacting any business in the District of Columbia;

.    .    .    .    .

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia....

D.C.Code § 13–423(a)(1), (4). In making this argument, plaintiffs rely extensively on evidence relating to the actions of defendants in advertising in national publications reaching Washington, D.C. and with

regard to defendant NCL, defendant's advertisements in *The Washington Post*.

The burden of establishing the basis for the exercise of jurisdiction is on the plaintiffs. *See, e.g., McNutt v. General Motors Acceptance Corp.*, 248 U.S. 178, 182, 39 S.Ct. 91, 92, 63 L.Ed. 198 (1936); *Hutton v. Piepgres*, 451 F.Supp. 205, 207 (S.D.N.Y.1978).

Plaintiffs' claim that jurisdiction is proper with regard to defendant A AAABCO rests exclusively on two considerations: a) A AAABCO lists its toll-free telephone number in the District of Columbia telephone directory; and b) A AAABCO is alleged to have advertised in national publications which could reasonably have been expected to reach the District of Columbia.[3] Although plaintiffs sought and were granted leave to conduct discovery with regard to jurisdiction over defendant NCL, no such discovery was sought with regard to A AAABCO. As a result, the only indication of advertising by A AAABCO before the Court is the single A AAABCO advertisement that plaintiffs saw which allegedly induced them to contact A AAABCO.[4]

Whether considered in connection with the subsection (a)(1) transacting business clause or the subsection (a)(4) soliciting business provision of the long-arm statute, these activities are simply insufficient to satisfy the due process minimum contacts test of *International Shoe* and its progeny. *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). These activities are patently insufficient in this case to constitute purposeful availment of the privilege of conducting activities within the

these contentions in its memoranda of points and authorities.

**3.** It is not disputed that plaintiffs initiated the telephone call to A AAABCO in which they made their reservations. Plaintiffs' own unilateral actions cannot provide a basis for asserting jurisdiction over a nonresident defendant. *See, e.g., Daniel v. Costa Armatori*, 1980 A.M.C. 2874, 2879 (D.D.C.1980).

**4.** In contrast, the discovery materials obtained by plaintiffs with regard to defendant NCL indicate that NCL spent a total of $265,000 on advertising in *The Washington Post* over the past two years as well as $115,910 on advertising last year in other national publications and television commercials calculated to reach the District of Columbia.

District of Columbia so as to invoke the benefits and protections of its laws. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

The listing of a phone number in the District of Columbia telephone directory was found insufficient to satisfy the long-arm statute in the analogous case of *Cornwell v. C.I.T. Corp. of New York,* 373 F.Supp. 661, 662 (D.D.C.1974); *see also Ghanem v. Kay,* 624 F.Supp. 23, 24–25 (D.D.C.1984). Thus plaintiffs' claim rests principally on defendant A AAABCO's national advertising. Plaintiffs rely in this regard on language in *World-Wide Volkswagen* suggesting that the use of advertising reasonably calculated to reach a particular state is one factor that may be considered in determining whether the exercise of jurisdiction would meet due process requirements. *See World-Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. at 566. Indeed, as plaintiffs note, a number of courts have read this language as plaintiffs do to allow jurisdiction where this factor is present. *See, e.g., Southern Case, Inc. v. Management Recruiters International,* 544 F.Supp. 403, 406 (E.D.N.C.1982); *see also Federal Insurance Co. v. Piper Aircraft Corp.,* 341 F.Supp. 855, 857 (W.D.N.C.1972), *aff'd,* 473 F.2d 909 (4th Cir.1973). Other courts have rejected this approach. *See, e.g., Hankins v. Somers,* 39 N.C.App. 617, 251 S.E.2d 640, *pet. discr. rev. denied,* 297 N.C. 300, 254 S.E.2d 920 (1979).

■ However, regardless of whether there might be some cases where such advertising is constitutionally sufficient, the Court does not believe that use of a single advertisement in a publication of this nature is sufficient to effectively create the possibility of nationwide service of process. *See Southern Case,* 544 F.Supp. at 404

(noting that defendant "frequently" advertised in the *Wall Street Journal*); *Piper Aircraft,* 341 F.Supp. at 856 (noting that defendant "regularly" solicits business in national magazines circulated in forum). This reasoning is reinforced by the fact that the cases cited by plaintiffs where advertising was accepted as a basis for jurisdiction involved additional activities giving rise to jurisdiction as well as more extensive advertising activities. *See Southern Case,* 544 F.Supp. at 406–07 (noting that defendant maintained contractual relationships with franchisees in forum state, receives considerable royalties from franchisees in forum, and that defendant's representatives visited forum state) & n. 9 ("the advertisements placed in the instant situation, *along with the other contacts,* provide a sufficient basis for the exercise of jurisdiction" (emphasis supplied)); *Piper Aircraft,* 341 F.Supp. at 856 (noting that defendant maintained network of authorized service and sales facilities in forum in addition to national advertising activities). Accordingly, jurisdiction is not constitutionally proper as to defendant A AAABCO.[5]

■ Plaintiffs' claim that jurisdiction is proper with regard to defendant NCL represents a closer question as plaintiffs have obtained evidence through discovery indicating that NCL spent $115,910 on advertising last year in national publications and television commercials calculated to reach the District of Columbia and NCL spent a total of $265,000 on numerous advertising supplements appearing in *The Washington Post* in the last two years. However, it is well settled that regardless of the existence of *in personam* jurisdiction, the Court is empowered to transfer an action where such a transfer is appropriate.[6] Accordingly, the Court has decided

---

**5.** Nevertheless, as discussed *infra,* this finding does not mandate that the Court dismiss the action where transfer would be appropriate.

**6.** *See, e.g., Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962); *Taylor v. Love,* 415 F.2d 1118, 1120 (6th Cir. 1969), *cert. denied,* 397 U.S. 1023, 90 S.Ct. 1257, 25 L.Ed.2d 533 (1970); *Mayo Clinic v. Kaiser,*

383 F.2d 653, 655–56 (8th Cir.1967); *Volk Corp. v. Art-Pak Clip Art Service,* 432 F.Supp. 1179, 1181 (S.D.N.Y.1977).

Courts have apparently disagreed as to whether such a transfer is authorized by 28 U.S.C. § 1404(a), § 1406(a) or on a reading of these two provisions together. *See generally Corke v. Sameiet M.S. Song of Norway,* 572 F.2d 77, 79–

to transfer this action to the United States District Court for the Southern District of Florida with regard to both defendants. Whether considered under section 1404(a) or 1406(a), this conclusion is supported by a number of factors, including that the action could have been brought in Florida, most of the records and witnesses would seem to be located there, and the defendants would appear to be subject to personal jurisdiction in that forum.[7]

---

80 (2d Cir.1978). Cases in this District have not been uniform in this regard. *See LaBrier v. A.H. Robins Co.,* 551 F.Supp. 53, 56–57 (D.D.C. 1982) (denying transfer pursuant to section 1406(a) but granting transfer pursuant to section 1404(a)); *Mitchell Energy Corp. v. Mary Helen Coal Co.,* 524 F.Supp. 558, 564–65 (D.D.C. 1981) (authorizing transfer under section 1406(a) where defendant's activities insufficient to meet long-arm statute but action could have been brought in transferee court); *Textile Museum v. F. Eberstadt & Co.,* 440 F.Supp. 30, 33 (D.D.C.1977) (transfer granted pursuant to section 1406(a) where plaintiff had "reasonable but erroneous" belief that defendant was subject to jurisdiction in District of Columbia); *Norair Engineering Associates v. Noland Co.,* 365 F.Supp. 740, 743 (D.D.C.1973) (granting transfer pursuant to section 1404(a)). However, given the broad scope of sections 1404(a) and 1406(a), this Court's decision to transfer this action with regard to both defendants to the Southern District of Florida would be the same regardless of which provision is controlling.

7. In addition the Court notes that plaintiffs themselves sought transfer if the Court found that defendants were not subject to personal jurisdiction. Thus, there is less concern with disturbing the plaintiffs' original choice of forum.

Finally, the Court notes that defendant NCL also sought dismissal on venue grounds. Since 28 U.S.C. § 1406(a) recognizes transfer as a more appropriate remedy than dismissal where venue is improper, transfer of this action regardless of the question of personal jurisdiction with regard to NCL does not impose an undue hardship on NCL.