The **WINFIELD COLLECTION, LTD.,** a Michigan Corporation, Plaintiff,

v.

**Cynthia McCAULEY, d/b/a Wooden It Be Nice, Defendant.**

**No. 99–CV–75875–DT.**

United States District Court, E.D. Michigan, Southern Division.

July 24, 2000.

---

Robert C. Brandenburg, Robert C. Tuttle, Brooks & Cushman, Southfield, MI, for plaintiffs.

Cynthia McCauley, Houston, TX, for defendants.

## ORDER DISMISSING CASE

CLELAND, District Judge.

### I. Introduction

■ Before the court is the *pro se* defendant's motion, by way of letter, to dismiss the case for lack of personal jurisdiction. Alternatively, she seeks transfer of the case to Houston, Texas, where she resides. Plaintiff opposes the motion to dismiss, alleging that there are sufficient minimum contacts for the court to exercise personal jurisdiction over Defendant. Plaintiff acknowledges its burden to so demonstrate. Upon consideration, and in full recognition of the caution with which a court should proceed when evaluating such motions, the court determines that the case must be dismissed.

### II. Background

This is a copyright infringement case involving patterns from which craft items can be made. Plaintiff is a Fenton, Michigan manufacturer and seller of home-craft patterns.[1] Defendant is a citizen of Texas, and claims to be an educator who produces such crafts in her spare time. Some of her crafts are based upon Plaintiff's patterns; Defendant claims that she sells almost all of her crafts in the Houston area. Plaintiff asserts that its copyright prohibits commercial uses, although Plaintiff specifically permits craft show sales of at least some products made with its patterns. Plaintiff claims that Defendant has admitted enough to bring her into sufficient contact with Michigan as a forum state to permit the exercise of personal jurisdiction.

### III. Discussion

Defendant argues that this court lacks personal jurisdiction over her, and that even if personal jurisdiction is proper, the case should be transferred to United

1. Not particularly important to the litigation, but illustrated in Plaintiff's appended documents and website, are the many items that pattern purchasers can fabricate. Most are things intended for decorative placement out-side a home, such as various holiday-theme images of Easter bunnies and Santa's reindeer, and silhouetted images such as that of a howling coyote or of a cowboy appearing to lean against a wall.

States District Court serving Houston, Texas. Plaintiff and Defendant agree as to the underlying facts, but they disagree as to whether those facts establish the requisite "minimum contacts" between the defendant and Michigan. Plaintiff first points to two facts relating to Michigan contacts: Defendant purchased craft patterns from plaintiff by mail, and in 1999 sold crafts made with Plaintiff's pattern to two different Michigan residents. Plaintiff also argues that Defendant's method of conducting business on the Internet shows that she meets the minimum contacts test because Defendant's website is "interactive." Defendant specifically states that she has not transacted business in Michigan, that has she has never been to Michigan, never owned any property here, nor maintained any office here. Def.Mot. at ¶¶ 3, 4.

Persons may said to be "found" in this district only if they meet the "minimum contacts" test of *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Under *International Shoe* and its progeny, due process requires that a non-resident defendant have "certain minimum contacts such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316, 66 S.Ct. 154. The defendant's conduct in connection with the forum state must be such that it should "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Furthermore, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The 6th Circuit utilizes a three part test for determining whether personal jurisdiction exists under *Int'l Shoe:*

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir.1989) (citing *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir.1968)). In this case, the focus is on the first part of the test—whether McCauley purposefully availed herself of the privilege of doing business in Michigan.

In *LAK, supra*, the Sixth Circuit found that an Indiana partnership that sold Florida property to a Michigan partnership did not have sufficient minimum contacts with Michigan to establish personal jurisdiction. In that case, all of the negotiations were either in Florida or by phone between Michigan and Florida. The court emphasized that none of the defendant's representatives ever came to Michigan for any reason related to the transaction. Plaintiff's representative signed the final contract while in Michigan; defendant's representative signed it after it had been mailed to Indiana. The contract specified that it was to be governed by Florida law; no action under the contract needed to be taken in Michigan, nor did it provide for a continuing relationship between the parties. The court emphasized that all of the connections with Michigan were the kind of " 'random,' 'fortuitous,' and 'attenuated' contacts" rejected by the Supreme Court as being an insufficient basis for personal jurisdiction. *See LAK*, 885 F.2d at 1301. The Sixth Circuit quoted the Supreme Court:

The Supreme Court has emphasized, with respect to interstate contractual obligations, that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other

State for the consequences of their activities."

*Id.* at 1300 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)); *see also Conti v. Pneumatic Products Corp.,* 977 F.2d 978 (6th Cir.1992) (where most contact between parties took place outside of forum state, mailing materials to forum state, conducting some negotiations there, and mailing contract offer there not enough to establish minimum contacts).

Plaintiff's first point—that after Defendant purchased Plaintiff's craft patterns, she sold crafts made with those patterns to Michigan residents on two occasions—is the only actual contact Defendant is alleged to have had with Michigan.

Defendant's repeated purchase of patterns from defendant through the mail is noted as background by Plaintiff but is (correctly) not argued as a form of purposefully availing oneself of doing business in Michigan.

■ Defendant, in turn, states without contradiction that the sales were made upon submitting her crafts for sale on "E-bay," an online auction house. She states that she did not target Michigan, but that Michigan residents turned out to be the high (i.e."winning") bidders in these instances. The court takes judicial notice that the function of an auction is to permit the highest bidder to purchase the property offered for sale, and the choice of that highest bidder is therefore beyond the control of the seller.

Thus, Defendant cannot be said from these sales of this kind to have "purposefully availed herself" of the privilege of doing business in Michigan. Such sales are a "random" and "attenuated" contact comparable to that in *LAK,* where the dispute arose, at least in part, out of the fortuitous contact defendant had with the forum state.

Plaintiff's second argument—that Defendant's website is "interactive" (as opposed to passive), forms the only other basis on which Plaintiff asserts personal jurisdiction.

In most traditional business circumstances, it is relatively easy for courts to discern whether or not business is conducted in a particular jurisdiction by simply examining the behavior of the parties. But with Internet-conducted affairs, things are often not so black-or-white. Some courts have used the "sliding scale" analysis articulated in *Zippo Mfg. Co. v. Zippo Dot Com. Inc.,* 952 F.Supp. 1119 (W.D.Pa. 1997), cited by Plaintiff. The "sliding scale" focuses on "the nature and quality of commercial activity that an entity conducts over the Internet." *Id.* at 1124. *Zippo* involved a defendant, Zippo Dot Com, Inc., that offered business exclusively through the Internet, resulting in some significant account activity in Pennsylvania. The *Zippo* court suggested three categories of Internet-related activity: (1) those who reach out, originate and repeatedly conduct business over the Internet with people in a foreign jurisdiction: such people subject themselves to that state's courts as would a person who repeatedly conducts such business either in person or by telephone; (2) those who merely post information on the Internet: such people do not subject themselves to foreign jurisdiction; and (3) those who maintain "interactive" sites. These were identified by the *Zippo* court as occupying a "middle ground" in which "the user can exchange information with the host computer." *Id.* In such circumstances, "the level of interactivity and commercial nature of the exchange" informs the court as to the propriety of exercising personal jurisdiction. *Id.*

It appears that the *Zippo* court viewed an "interactive" site as involving a kind of hybrid passiveness in which a web site sits quietly and allows itself to be manipulated by users; a high "level of interactivity" may lead to a conclusion that the site's sponsor was allowing the computer to do enough in his absence that he should be construed to have actively been doing it himself, thereby subjecting him to the jurisdiction of any state from which the site could be accessed.

However, the distinction drawn by the *Zippo* court between actively managed, telephone-like use of the Internet and less active but "interactive" web sites is not entirely clear to this court. Further, the proper means to measure the site's "level of interactivity" as a guide to personal jurisdiction remains unexplained. Finally, this court observes that the need for a special Internet-focused test for "minimum contacts" has yet to be established. It seems to this court that the ultimate question can still as readily be answered by determining whether the defendant did, or did not, have sufficient "minimum contacts" in the forum state. The manner of establishing or maintaining those contacts, and the technological mechanisms used in so doing, are mere accessories to the central inquiry.

Indeed, in *Zippo*, the court was presented with a defendant who had solicited and secured the business of some three thousand Pennsylvania customers. Although that number was a relatively small percentage of the defendant's overall business, the court held that "even a single contact can be sufficient." *Zippo*, 952 F.Supp. at 1127 (citing *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). Even the *Zippo* court noted that the "interactive" test was "focused on the 'nature and quality' of the contacts with the forum and not the quantity of those contacts." *Id.* (citing *Int'l Shoe*, 326 U.S. at 320, 66 S.Ct. 154). Ultimately, the court was persuaded that even though Zippo Dot Com had not *actively* sought out clients in Pennsylvania, the fact that it had *acquired* many such customers through "interactive" postings on the Internet was sufficient activity to permit personal jurisdiction to attach consistent with the Due Process clause.

■ This court understands Plaintiff's argument that Defendant's site is "interactive," as was Zippo Dot Com, Inc., at least in the sense that the site can send and receive messages, including responding to purchase orders. However, the court is not persuaded that such interactivity implies anything regarding the extent of Defendant's involvement with Michigan as a specific forum for any of her business. The court takes notice that almost all commercial websites can be accessed from anywhere a computer can be connected to an Internet service, such as America Online, and that this includes almost every place in the United States (and probably far beyond) with ground-line or cellular telephone service. The court, however, is without any detail either as to the "level of interactivity" demonstrated by Defendant's site, or as to how that level of interactivity might compare with one who actively and intentionally does business with customers in Michigan. Plaintiff presents no information indicating that Defendant's interactive Internet website has resulted in the development of any customer base in Michigan reminiscent of that noted by the *Zippo* court. Without such indications of active (or perhaps "interactive") efforts to secure customers in the forum state through her website, the use of the Internet alone is no more indicative of local jurisdictional contacts than an isolated advertisement in a nationally-distributed magazine.[2]

2. The use of advertising reasonably calculated to reach a *particular* state may be a factor to be considered in determining whether the exercise of jurisdiction would meet due process requirements is suggested by language in *World–Wide Volkswagen, supra,* 444 U.S. at 295, 100 S.Ct. 559. But most courts in relying on this factor, even in part, have emphasized that a defendant has "frequently" advertised, or "regularly" solicited business in national magazines circulated in the forum state, and have often found reinforcement in additional activities giving rise to jurisdiction, such as a defendant maintaining contractual relationships with, or receiving royalties from, franchisees in the forum, or actually visiting the forum state. *See, e.g., Southern Case, Inc. v. Management Recruiters Int'l,* 544 F.Supp. 403, 406 (E.D.N.C.1982); *Federal Ins. Co. v. Piper Aircraft Corp.,* 341 F.Supp. 855, 857 (W.D.N.C.1972), *aff'd,* 473 F.2d 909 (4th Cir.1973); *Blair v. Norwegian Caribbean Lines,* 622 F.Supp. 21, 23–24 (D.D.C.1985).

In short, the court is not prepared to broadly hold, as Plaintiff implies, that the mere act of maintaining a website that includes interactive features *ipso facto* establishes personal jurisdiction over the sponsor of that website anywhere in the United States.

Relatively little personal jurisdiction case law concerning the Internet has developed in this circuit. At a minimum, however, it is clear that the operators of Internet businesses remain entitled to the protections of the Due Process clause with respect to the assertion of personal jurisdiction. *See CompuServe Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). In *CompuServe,* the Sixth Circuit determined that a contractual relationship entered into between a Texas citizen and an Ohio business, followed by the citizen's actual use from Texas of computer "servers"[3] located in Ohio, was enough activity for him to have purposefully availed himself of the privilege of doing business in Ohio. *See CompuServe,* 89 F.3d at 1261. No equivalent connection with Michigan entities is shown in this case, nor any connection at all beyond the mere fortuity of auction bidders hailing from the Wolverine State.

Plaintiff has provided to this court the opinion in *Amway v. Procter & Gamble,* File No. 1:98–CV–726 (W.D.Mich. Jan. 6, 2000) (Bell, J.) (unpublished opinion). There, the court noted that "something more" than mere Internet presence should be required to assert personal jurisdiction, and found that "something more" in the "effects doctrine." *Id.* at 6 (citing *Panavision Int'l. L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir.1998)). The "effects doctrine" holds that jurisdiction may attach if the conduct of the defendant was aimed at or has an effect in the forum state. *See Panavision,* 141 F.3d at 1321. However, Plaintiff identifies no continuing relationship between Defendant and anyone or anything in Michigan, save the craft pattern purchases made from Plaintiff itself. The only contact that McCauley is proven to have had with the State of Michigan is fortuitous and *de minimus:* the results of two auction sales underpinning the instant dispute, and over which Defendant had little, if any, control. In the view of this court, it would "offend traditional notions of fair play and substantial justice," *Int'l Shoe,* 326 U.S. at 316, 66 S.Ct. 154, to hale her into a Michigan court for suit when she has not *purposefully* availed herself of the benefits of Michigan law.

Because the court finds the first prong of the *LAK* test lacking, the court need not examine the second and third prongs. *See LAK,* 885 F.2d at 1303.

Therefore, even taking Plaintiff's allegations and proofs as true, the court does not have personal jurisdiction over McCauley, and her motion to dismiss must be granted.

## IV. Conclusion

Accordingly, IT IS ORDERED that defendant McCauley's motion to dismiss is hereby GRANTED.

---

**3.** In this context, "servers" are the computer equipment in which Internet-delivered information is stored and from which it may be accessed.