**GLAXO INC. and Glaxo Group Ltd., Plaintiffs,**

v.

**GENPHARM PHARMACEUTICALS, INC., Defendant.**

**No. 91–222–CIV–5–BO.**

United States District Court, E.D. North Carolina, Raleigh Division.

June 19, 1992.

Joseph W. Eason, Moore & Van Allen, Raleigh, N.C., for plaintiffs.

Robert W. Spearman, Stephen D. Coggins, Parker, Poe, Adams & Bernstein, Raleigh, N.C., for defendant.

## ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This matter is before the court on the following motions: (1) Glaxo's appeal of a

magistrate's order barring Glaxo's in-house patent counsel from reviewing confidential Genpharm documents obtained through discovery; (2) Genpharm's motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer to the District of Maryland; and (3) Glaxo's motion to consolidate this case with the case of *Glaxo, Inc., et al. v. Novapharm Ltd.*, No. 91–759–CIV–5–BO (E.D.N.C.), also pending before this court.

For the reasons set forth below, the magistrate's discovery order is reversed, the motion to transfer to the District of Maryland is granted, and the motion to consolidate is denied as moot.

### Background of the Case

This is a patent infringement action brought pursuant to 35 U.S.C. § 271(e)(2)(A), involving the widely-used anti-ulcer drug ranitidine hydrochloride, more popularly known by its tradename Zantac.[1]

Plaintiff Glaxo Group, Ltd., a United Kingdom corporation with its principal place of business in London, England, owns two patents on ranitidine hydrochloride. The first patent, U.S. Patent No. 4,128,658 (the '658 patent), expires on December 5, 1995, and is not at issue in this lawsuit. The second patent, U.S. Patent No. 4,521,-431 (the '431 patent), the subject of this infringement action, expires on June 4, 2002.

Plaintiff Glaxo, Inc., a North Carolina corporation with its principal place of business in Zebulon, North Carolina, is a licensee of the '431 patent and the sole marketer of Zantac in the United States. The company, in fact, is the only holder of an FDA permit, known as an approved New Drug Application, to sell the drug in this country.[2]

Defendant Genpharm Pharmaceuticals, Inc., a Canadian corporation with its princi-pal place of business in Ontario, Canada, seeks to market a generic version of Zantac as soon as the '658 patent expires in December 1995, in the belief that Glaxo's '431 patent is invalid. Accordingly, on February 4, 1991, pursuant to § 505(j) of the Food, Drug, and Cosmetic Act (the "Act"),[3] Genpharm filed an Abbreviated New Drug Application ("ANDA") with the Food and Drug Administration in Rockville, Maryland, seeking approval to engage in the commercial manufacture, use, or sale of ranitidine hydrochloride in the United States.

As required by the Act, Genpharm provided in its ANDA scientific data designed to show the equivalence of its drug with Glaxo's. In addition, since every ANDA must contain a "certification" concerning the status of patents which may cover the subject drug, see 21 U.S.C. § 355(j)(2)(A)(vii), Genpharm "certified" that Glaxo's '431 patent was invalid.

The Act also required Genpharm to send notice of its certification of invalidity to the patent owner—Glaxo Group, Ltd.—and to the holder of the FDA-approved New Drug Application for the marketing of ranitidine hydrochloride in the United States—Glaxo, Inc. *See* 21 U.S.C. § 355(j)(2)(B)(i). Therefore, on March 19, 1991, Genpharm mailed the required notice to Glaxo Group and Glaxo, Inc., in the form of a written "Certification of Invalidity of U.S. Patent No. 4,521,431 for Aminoalkyl Furan Derivative." The Certification was received by Glaxo, Inc., in North Carolina on March 25, 1991, and by Glaxo Group in England on March 20, 1991.

In response to situations such as this one, Congress amended Title 35 of the United States Code in 1984 to provide an opportunity for litigating and determining patent issues before FDA approval of the ANDA is granted and marketing by the

---

1. Zantac is the largest selling drug in the United States.

2. Glaxo Group, Ltd., and Glaxo, Inc., are closely related affiliates. Glaxo Group is the corporate parent of Glaxo Americas, Inc., of which Glaxo, Inc., is a subsidiary. The two plaintiff corporations will be referred to collectively in this order as "Glaxo."

3. 21 U.S.C. § 355(j).

applicant begins.[4] Under 35 U.S.C. § 271(e)(2)(A), it is a technical act of patent infringement to submit an ANDA seeking FDA approval to manufacture, use, or sell a drug prior to the expiration of a patent claiming this drug. Accordingly, after receiving Genpharm's Certification notice, Glaxo filed this suit against Genpharm on April 8, 1991, claiming infringement of the '431 patent.[5]

Genpharm filed its motion to dismiss for lack of personal jurisdiction on May 24, 1991, and the parties subsequently engaged in discovery concerning jurisdictional issues. During this discovery period, a magistrate denied Glaxo's in-house counsel access to confidential Genpharm documents obtained through discovery.

### Conclusions of Law

#### A. The Magistrate Judge's Discovery Order

■ In an order dated March 11, 1992, the Honorable Alexander B. Denson, United States Magistrate Judge, denied Mr. Salvatore Conte, Glaxo's in-house patent counsel, access to confidential materials obtained from Genpharm through discovery. The magistrate judge held that the risk of improper use of these materials outweighed Glaxo's need for Mr. Conte's participation, on the grounds that (1) Mr. Conte was both a high level employee and a substantial investor in Glaxo; (2) Glaxo had retained three outside law firms as counsel which could adequately represent its interests; and (3) Genpharm had no in-house counsel. Glaxo appeals this ruling.

■ The Federal Circuit has held that in patent cases, in-house counsel cannot be barred from confidential materials solely because of their in-house status, as in-house counsel, like retained counsel, are officers of the court and are bound by the Code of Professional Responsibility. *U.S. Steel Corporation v. United States*, 730 F.2d 1465 (Fed.Cir.1984); *see also Matsu-*

*shita Electrical Industrial Co., Ltd. v. United States*, 929 F.2d 1577 (Fed.Cir. 1991). The decisive factor in denying in-house counsel access is whether the in-house counsel is involved in "competitive decisionmaking." *U.S. Steel*, 730 F.2d at 1468. "Competitive decisionmaking" is defined as:

> shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

*Id.* at 1468 n. 3.

In the present case, Mr. Conte, a member of three different bars who has been an in-house patent counsel for over 28 years, attests in two uncontroverted affidavits that he has no involvement in and gives no advice to Glaxo about competitive decisions such as pricing, scientific research, sales or marketing. In addition, he states that he will no longer participate in any matter concerning ranitidine hydrochloride, except for this case or other lawsuits involving the validity or enforcement of Glaxo's ranitidine hydrochloride patents.

Accordingly, the court finds that Mr. Conte is not involved in competitive decisionmaking at Glaxo such that the risk of his using confidential information improperly outweighs his need for access to these materials. The magistrate judge's decision was in error, and is therefore REVERSED.

#### B. Personal Jurisdiction Over Genpharm

■ Genpharm moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, or in the alternative, seeks transfer of the case to the District of Maryland, contending that it does not have the neces-

---

**4.** *See* The Drug Price Competition and Patent Term Restoration Act of 1984 (the Waxman–Hatch Act).

**5.** The complaint does not specify how Glaxo, Inc., as a mere licensee, has standing to sue for

infringement. The court assumes for purposes of this motion that Glaxo Group Ltd. has authorized Glaxo, Inc., in its license to prosecute infringement.

sary "minimum contacts" with North Carolina.

The determination of whether personal jurisdiction exists here requires a two-step inquiry. First, since there is no provision within the patent laws authorizing nationwide service of process, the court must look to whether North Carolina's long-arm statute, N.C.Gen.Stat. § 1–75.4, confers jurisdiction. Fed.R.Civ.P. 4(e); *Southern Case, Inc. v. Management Recruiters International, Inc.*, 544 F.Supp. 403, 405 (E.D.N.C.1982). Attention then turns to federal law for an analysis of whether the exercise of jurisdiction would violate due process of law. *Id.*

At oral argument, plaintiff asserted it was relying on N.C.Gen.Stat. § 1–75.4(1)(d) to invoke the court's jurisdiction over Genpharm. This section of the state long-arm statute allows jurisdiction over a person "engaged in substantial activity [in North Carolina], whether such activity is wholly interstate, intrastate, or otherwise." [6] This provision has been liberally construed by the North Carolina courts to permit the assertion of *in personam* jurisdiction over foreign corporations to the full extent allowed by due process under the United States Constitution. *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629 (1977); *Southern Case*, 544 F.Supp. at 405. Accordingly, the first step of the court's inquiry collapses into the second, and the court is faced with a single issue: whether the exercise of *in personam* jurisdiction over Genpharm would comport with the constitutional standards of due process.[7]

For a defendant to be subject to suit in a forum where it is not physically present, due process demands certain "minimum contacts" with the forum such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Specifically, the defendant's conduct and connection with the forum State must be such that "he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). There must be some act by which the defendant "purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). To find jurisdiction, the court must be satisfied that "an action of the defendant [is] purposefully directed toward the forum State." *Asahi Metal v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987).

Here, Genpharm's contacts with North Carolina are virtually non-existent. Defendant (1) does not regularly transact or solicit business in North Carolina; (2) has no office or agents in this state; (3) is not licensed to do business in North Carolina; (4) has never manufactured, sold, marketed, or distributed anything in North Carolina; (5) has never leased or owned any real property in North Carolina; and (6) has never had a North Carolina bank ac-

---

6. N.C.Gen.Stat. § 1–75.4(4), "Local Injury; Foreign Act," might also apply. This section provides for jurisdiction:

> In any action ... claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury: a. Solicitation or services activities were carried on within this State by or on behalf of the defendant; or b. Products, materials or thing processed, serviced or manufactured by the defendant were used or consumed within this State in the ordinary course of the trade.

Plaintiff, however, has presented no evidence satisfying (a) or (b) (*see infra*). The court finds

that no other section of the long-arm statute is remotely applicable.

7. Although this is a federal question case governed by the due process clause of the Fifth Amendment, and the North Carolina long-arm statute is to be construed to the limits of due process under the due process clause of the Fourteenth Amendment, the same factors are used under both clauses to determine if the assertion of *in personam* jurisdiction is constitutional. *Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 293–296 (3rd Cir.1985), *cert. denied*, 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985).

count, mailing address or telephone number.

In fact, plaintiff points to only a single contact by Genpharm with North Carolina as a basis for jurisdiction, namely, Genpharm's mailing of the notice of certification of invalidity of the '431 patent to Glaxo, Inc., in North Carolina on March 19, 1991.[8]

The court finds that this contact is insufficient to support personal jurisdiction over the defendant. Genpharm's mailing of its certification of invalidity of the '431 patent to Glaxo, Inc., in North Carolina was not a purposeful act directed at North Carolina such that litigation in this forum could have been reasonably foreseen. Genpharm was simply complying with the federal statute, 21 U.S.C. § 355(j)(2)(B)(i), which required that the approved-NDA holder of ranitidine hydrochloride (who in this case is not even the patent owner) be notified; nothing in the statute or case law suggests that the defendant would be subject to an infringement suit wherever the notice to the approved-NDA holder is mailed. Mailing a statutorily-required notice is not akin to soliciting business, introducing products into the forum, or signing and performing a contract within the forum. *See, e.g., Medeco Security Locks, Inc. v. Fichet–Bauche*, 568 F.Supp. 405 (W.D.Va.1983) (defendant-patentee's mailing of letter to alleged infringer in Virginia pointing out similarities in the parties' products was not sufficient contact with Virginia to subject

patentee to declaratory judgment action over the validity of the patent there).

Plaintiffs contend that Genpharm is subject to jurisdiction here because the mailing of the notice of certification was an integral part of the act of patent infringement by the defendant. Citing *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), plaintiffs assert that jurisdiction is justified because this infringement was a "purposeful, tortious activity" directed against Glaxo, Inc., in North Carolina, as Genpharm knew when it filed its ANDA with the FDA that it was threatening "to inflict substantial economic injury upon Glaxo within North Carolina."

The court finds that plaintiffs' reliance on *Calder* is inapt. *Calder* involved the intentional publication of a libelous newspaper article in the plaintiff's home state by an out-of-state defendant; here, Glaxo is trying to enforce its rights under the '431 patent, which was "infringed" in Maryland.[9] While it may be argued that Genpharm's ANDA filing has subsequent effects in North Carolina, the filing of the ANDA was not act by which the defendant purposefully availed itself of the privileges of conducting activities within North Carolina. *Cf. Whistler Corp. v. Solar Electronics, Inc.*, 684 F.Supp. 1126 (D.Mass. 1988) (patentee's filing of infringement suit in Illinois against a Massachusetts corporation was not an act which could subject patentee to personal jurisdiction in Massachusetts). It is immaterial, in this context, that Genpharm knew when it filed its ANDA that it would cause apprehension

---

**8.** The parties have identified only two other contacts by Genpharm with North Carolina in addition to the mailing of the notice of the certification: (1) on April 16, 1991, Genpharm entered into a six-month contract with a North Carolina laboratory for analytical services concerning a drug unrelated to this case; and (2) in 1989, Genpharm communicated by telephone and once by letter with a North Carolina professor to obtain price information for the performance of services unrelated to this case (the professor was never hired).

Plaintiff makes no argument that these two isolated contacts support *in personam* jurisdiction. Clearly defendant did not engage in systematic and continuous activity in North Carolina such that its contacts could support jurisdiction with respect to a claim that does not arise from those contacts. *See Helicopteros Na-*

*cionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

**9.** 35 U.S.C. § 271(e)(2) provides in pertinent part:

It shall be an act of infringement to submit— (A) an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act ... for a drug claimed in a patent ... if the purpose of such submission is to obtain approval under such Act to engage in the commercial manufacture, use, or sale of a drug claimed in a patent or the use of which is claimed in a patent before the expiration of such patent.

Under the clear language of the statute, Glaxo's '431 patent was "infringed" when Genpharm filed its ANDA with the FDA in Rockville, Maryland, not when it mailed notice to Glaxo, Inc. in North Carolina.

and possibly economic harm in North Carolina, since "the foreseeability of injury in a distant forum is not the touchstone of minimum contacts." *Chung v. NANA Development Corp.*, 783 F.2d 1124, 1128 (4th Cir.1986), *cert. denied,* 479 U.S. 948, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986).

■ Accordingly, the court finds that defendant's contacts with North Carolina are not sufficient to give this court personal jurisdiction over the defendant, consistent with the "traditional conception of fair play and substantial justice" embodied in due process.[10]

Plaintiff has the burden of proving jurisdiction by the preponderance of the evidence. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Haynes v. James H. Carr, Inc.*, 427 F.2d 700, 704 (4th Cir.1970). This burden has not been met.

Rather than dismiss this case for lack of personal jurisdiction, however, the court finds that it is in the interest of justice to transfer the case to the District of Maryland, as that court will have proper jurisdiction and venue.

The court has the authority to effect this transfer pursuant to 28 U.S.C. 1406(a), as the District of Maryland is a district in which this case "could have been brought." *See Goldlawr v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962); *Porter v. Groat,* 840 F.2d 255 (4th Cir.1988). Genpharm consents to personal jurisdiction in Maryland (where defendant maintains an agent). In addition, the act of infringement took place in Maryland, and many of the documents relevant to this case are stored in Maryland.

Accordingly, defendant's motion to transfer this case to the District of Maryland is GRANTED.

### C. Plaintiff's Motion to Consolidate

Since the court has transferred this case to the District of Maryland, plaintiffs' motion to consolidate this case with *Glaxo v. Novapharm,* 91–759–CIV–5–BO (E.D.N.C.), is DENIED as moot.[11]

SO ORDERED.

---

**10.** The plaintiff posits an alternative theory upon which a finding of minimum contacts may be established, known as the "national contacts theory." Under this theory, jurisdiction can be determined on the basis of the alien corporation's aggregated contacts with the United States as a whole, regardless of whether the contacts with the state in which the district court sits would be sufficient if considered alone. The theory is based on two rationales: (1) that a federal court can assert nation-wide jurisdiction; and (2) an alien corporation might completely avoid suit in any state where sales in each state make up only a fraction of the nationwide market of the defendant's products.

The Fourth Circuit has never specifically addressed the validity of the national contacts theory. However, the majority of federal courts addressing the issue have held that in federal question cases, there must be a federal rule or statute authorizing nationwide service of process before the national contacts theory can be applied. In *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290 (3rd Cir.1985), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985), for example, the Third Circuit found the national contacts theory inapplicable in a patent infringement case because there was no authority within the patent laws authorizing nationwide service of process.

The court adopts the reasoning of the Third Circuit in *Daetwyler* and declines to apply the national contacts theory to this case.

**11.** Novapharm has consented to personal jurisdiction in this District and neither Glaxo nor Novapharm wants their lawsuit transferred to Maryland.