ZENECA LIMITED, Plaintiff,

v.

MYLAN PHARMACEUTICALS,
INC., Defendant.

Civil Action No. 96–333.

United States District Court,
W.D. Pennsylvania.

May 13, 1997.

Gary P. Hunt, Tucker, Arensberg, Pittsburgh, PA, Herbert H. Mintz, John C. Lowe, Robert D. Litowitz, Barbara R. Rudolph, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, James E. Gray, Michael B. MacWilliams, Goodell, DeVries, Leech & Gray, Baltimore, MD, for Plaintiff.

Samuel W. Braver, Buchanan Ingersoll, Pittsburgh, PA, James H. Wallace, Jr., Wiley, Rein & Fielding, Washington, DC, Roger L. Foster, Dawn J. Beto, Mylan Pharmaceuticals, Inc., Morgantown, WV, Paul M. Sandler, Brian Zemil, Freishtat & Sandler, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION

LEE, District Judge.

Presently before the Court is Zeneca Limited's ("Zeneca") Motion To Retransfer This Action To The District Of Maryland And Certify To The U.S. Court of Appeals For The Federal Circuit (Document No. 31).[1] After considering the parties' memoranda and examining the applicable law the Court will grant Zeneca's Motion to Retransfer and will certify for interlocutory appeal the question of the effect of 35 U.S.C. § 271(e)(2) on personal jurisdiction over Defendant Mylan Pharmaceuticals, Inc. ("Mylan") in the United States District Court for the District of Maryland ("Maryland Court") in light of the "government contacts" exception.[2]

1. Zeneca's Motion To Retransfer also includes a request for a Stay of any Order issued by the Court as well as a request for oral argument. The request for Stay will be treated in the within Opinion and accompanying Order. Zeneca's request for oral argument will be denied in a separate Order.

2. The "government contacts" exception is also variously referred to as the "government contacts" rule or the "government contacts" doctrine.

3. *See* 35 U.S.C. § 271(e)(2); *see also Eli Lilly & Co. v. Medtronic, Inc.,* 496 U.S. 661. 678, 110 S.Ct. 2683, 2692–93, 110 L.Ed.2d 605 (1990); *Glaxo, Inc. v. Novopharm, Ltd.,* 110 F.3d 1562, 1568. (Fed.Cir.1997); *Bristol–Myers Squibb Co. v. Royce Laboratories, Inc.,* 69 F.3d 1130, 1135

## INTRODUCTION

Zeneca is the patent owner for the pharmaceutical tamoxifen, U.S. Patent No. 4,536,-516 ("516 patent"). Mylan submitted an Abbreviated New Drug Application ("ANDA") to the Food and Drug Administration (FDA), located in Rockville, Maryland, seeking approval to market the 516 patent before the patent expires. Mylan also submitted a certification, pursuant to 21 U.S.C. § 355(j)(2)(A)(vii), stating that the 516 patent is invalid and/or unenforceable. Mylan's submission of the ANDA and its filing of the accompanying relevant certification is a statutory act of patent infringement.[3] After receiving notification of the filing of the ANDA and certification from Mylan, Zeneca filed this patent infringement action against Mylan in the United States District Court for the Western District of Pennsylvania on February 22, 1996.

Zeneca subsequently filed a motion to transfer the case to the Maryland Court. This Court granted Zeneca's motion to transfer on May 31, 1996, pursuant to 28 U.S.C. § 1404(a). In granting the motion the Court based its ruling on, *inter alia,* the fact that several other cases were pending involving the same patent and same plaintiff before the same Judge in the Maryland Court; that a savings in time, cost and convenience would result from potential consolidation of the cases, which would serve the interests of justice: and that jurisdiction is proper in the District of Maryland. *Zeneca v. Mylan Pharmaceuticals, Inc.,* Civil Action No. 96–333, slip op. at 2–3, 1996 WL 911211 (W.D.Pa. May 31, 1996).[4]

(Fed.Cir.1995); *Abbott Laboratories v. Zenith Laboratories, Inc.,* 1995 WL 117984, at *4 (N.D.Ill.1995); and *Glaxo Inc. v. Genpharm Pharmaceuticals, Inc.,* 796 F.Supp. 872, 876 n. 9 (E.D.N.C.1992).

4. To the extent that factors discussed in this Court's May 31, 1996 Order favoring transfer of this action to Maryland remain viable, the Court incorporates its May 31, 1996 Order. In addition, the Court notes that Judge Smalkin has already presided over one Zeneca 516 patent action holding Zeneca's 516 patent not invalid, enforceable and infringed under section 271(e)(2). *Zeneca Ltd. v. Novopharm Ltd.,* Civil Action No. S 95–163 (D.Md. April 26, 1996), *aff'd,* 1997 WL 168318 (Fed.Cir.1997).

On January 3, 1997, the Maryland Court, Honorable Frederic N. Smalkin, issued an Order transferring this action back to the Western District of Pennsylvania for want of personal jurisdiction pursuant to 28 U.S.C. § 1631. *Zeneca Ltd. v. Mylan Pharmaceuticals, Inc.*, Civil Action No. S 96–1763, slip op. (D.Md. January 3, 1997). Judge Smalkin found that Mylan was not subject to either general or specific personal jurisdiction in Maryland. Particularly relevant to the instant motion, Judge Smalkin found that Mylan's act of submitting an ANDA to the FDA in Maryland falls under the "government contacts" exception and therefore cannot be relied upon as a basis for asserting personal jurisdiction over Mylan.[5] Zeneca filed the instant Motion in the Western District of Pennsylvania on January 31, 1997.

In support of its Motion, Zeneca asserts that the Maryland Court erred as a matter of law in finding that Mylan was not subject to personal jurisdiction in Maryland. Specifically, Zeneca argues that the government contacts exception, applied by the Maryland Court, is inapplicable to Mylan's intentional act of infringing Zeneca's patent. Finally, in addition to its request for an order retransferring the action to the Maryland Court, Zeneca requests that this Court certify for appeal the question of personal jurisdiction over Mylan in the Maryland Court.

Mylan, however, contends that this Court is barred by the law of the case from reviewing the Maryland Court's transfer Order. Alternatively, Mylan asserts that the Maryland Court's decision correctly applied the government contacts exception resulting in a determination that the Maryland Court lacked personal jurisdiction over Mylan. Finally, Mylan opposes Zeneca's motion to certify the personal jurisdiction question for appeal.

## DISCUSSION

*Law of The Case Does Not Bar Review of the Maryland Court's Transfer Order*

[1] Mylan argues that the Maryland Court's January 3, 1997 Order transferring this action to the Western District of Pennsylvania is the law of the case and as such "that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988). Mylan thus claims that the Maryland Court transfer Order is not subject to review in this Court absent extraordinary circumstances. *Id.* 486 at 817, 108 S.Ct. at 2178.

Mylan misapplies the *Christianson* rationale to the factual procedure of the instant case. The procedural history of *Christianson* parallels the transfer history in this case (although *Christianson* concerned transfer orders between coordinate Courts of Appeal, rather than sister District Courts). In *Christianson*, summary judgment was entered against the defendant, Colt Industries, by the District Court for the Southern District of Illinois. Colt appealed that decision to the United States Court of Appeals for the Federal Circuit. The Federal Circuit Court determined it lacked jurisdiction over the appeal and transferred the action to the United States Court of Appeals for the Seventh Circuit. The Seventh Circuit Court of Appeals retransferred the case to the Federal Circuit. The Federal Circuit again determined it lacked jurisdiction, but chose to decide the case on the merits.[6]

The Supreme Court, after reviewing the doctrine of the law of the case, explained that the Federal Circuit properly reviewed the Seventh Circuit's retransfer. First, the law of the *Christianson* case was initially decided

---

5. Six months earlier, Judge Smalkin determined that a defendant in one of Zeneca's 516 patent cases was also not subject to personal jurisdiction in Maryland under the government contacts exception and retransferred the case to the District of Massachusetts where it originated. *Zeneca Ltd. v. Pharmachemie B. V.*, Civil Action No. S 96–884, slip. op. (D.Md. June 17, 1996).

6. The Supreme Court disapproved the Federal Circuit's decision to reach the merits citing 28 U.S.C. § 1631, which "confers on the Federal Circuit authority to make a single decision upon concluding that it lacks jurisdiction—whether to dismiss the case or, 'in the interest of justice,' to transfer it to a court of appeals that has jurisdiction." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988).

by the Federal Circuit when it transferred the action to the Seventh Circuit. Thus, "it was the Seventh Circuit, not the Federal Circuit, that departed from the law of the case". *Id.*, 486 U.S. at 817, 108 S.Ct. at 2178. Second, "[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Id.* (citation omitted). Therefore, the Federal Circuit Court of Appeals had the power to review the Seventh Circuit's decision with regard to jurisdiction even if the Seventh Circuit's decision was the law of the case. *Id.*

Following the rationale of the *Christianson* Court, it is apparent that this Court's initial Order dated May 31, 1996, transferring the case to Maryland is the law of the case. The relevant jurisdictional decision made by this Court is that Mylan's filing of an ANDA, "is a statutory act of patent infringement, 35 U.S.C. § 271(e) and provides for jurisdiction for suit in Maryland." [7] *Zeneca v. Mylan Pharmaceuticals, Inc.*, Civil Action No. 96–333, slip op. at 2, 1996 WL 911211 (W.D.Pa. May 31, 1996) (citing *Glaxo Inc. v. Genpharm Pharmaceuticals, Inc.*, 796 F.Supp. 872, 876 n. 9 (E.D.N.C.1992)). The Maryland Court disagreed with this decision and found that the Maryland Court lacked personal jurisdiction. Although the Maryland Court did not make a specific finding, the necessary implication of the Maryland Court's opinion is that this Court's May 31, 1996 jurisdictional finding was clearly erroneous.

The Court now revisits its initial jurisdictional decision and finds that jurisdiction over Mylan in Maryland is proper and thus, the action will be retransferred. However, pursuant to 28 U.S.C. § 1292(a) and (b), the retransfer Order will be stayed and the juris-

dictional question will be certified for appeal to the Federal Circuit Court of Appeals.[8]

## Jurisdiction Over Mylan in Maryland is Proper based on Mylan's submitting an ANDA and filing a Paragraph IV Certification

The Court will first determine whether personal jurisdiction over Mylan is proper before considering the government contacts exception. *See U.S. v. Wilfred American Education Corp.*, 1987 WL 10501, at *3 (D.D.C.1987) (jurisdiction upheld where defendant's "petition" to Department of Education to benefit from federal student aid programs was found not to implicate first amendment and government contacts exception was not applicable). Important to an understanding of the personal jurisdiction question is an understanding of the relevant background of section 271(e).

The relevant portions of 35 U.S.C. § 271(e)(2)(A) state:

> (e)(2) It shall be an act of infringement to submit—
>
> (A) an application ... for a drug claimed in a patent or the use of which is claimed in a patent....

if the purpose of such submission is to obtain approval under such Act to engage in the commercial manufacture, use, or sale of a drug or veterinary biological product claimed in a patent or the use of which is claimed in a patent before the expiration of such patent.

Essentially, section 35 U.S.C. § 271(e)(2) "gives a drug patent owner the right to bring an action for infringement upon the filing of a paragraph IV certification." *Bristol–Myers Squibb Co. v. Royce Laboratories, Inc.*, 69 F.3d 1130, 1135 (Fed.Cir.1995). Here, there is no dispute that Mylan has submitted an ANDA and filed a paragraph IV certification, thereby triggering a statuto-

---

7. As the *Christianson* Court explained, it is not relevant that the jurisdictional decision in the initial court was not fully explained: "the law of the case turns on whether a court previously 'decide[d] upon a rule of a law'—which [this Court] necessarily did—not on whether, or how well, it explained the decision." *Christianson*, 486 U.S. at 817, 108 S.Ct. at 2178.

8. The Federal Circuit Court of Appeals has jurisdiction over questions certified for appeal in patent actions pursuant to 28 U.S.C. § 1292 under 28 U.S.C. §§ 1292(c)(1), 1295(a)(1), and 1338(a).

ry patent infringement pursuant to section 217(e)(2).

The plain meaning of section 271(e)(2) is that it "provide[s] patentees with a defined act of infringement sufficient to create case or controversy jurisdiction to enable a court to promptly resolve any dispute concerning infringement and validity." *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1568–69 (Fed.Cir.1997). The United States Supreme Court has commented that section 271(e)(2) creates a "highly artificial act of infringement that consists of submitting an ANDA ... containing a [paragraph IV] certification that is in error as to whether commercial manufacture, use, or sale of the new drug (none of which, of course, has actually occurred) violates the relevant patent." *Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 678, 110 S.Ct. 2683, 2692–93, 110 L.Ed.2d 605 (1990).

The Federal Circuit Court explained that a section 271(e)(2) infringement is artificial "in the sense that a specific infringing composition has not yet been made, used, or sold, and is thus not necessarily available for a court to compare to the claims." *Novopharm*, 110 F.3d 1562, 1569 Thus, a court's inquiry going forward in a patent infringement action brought under section 271(e)(2) remains one of determining "whether the patent in question is 'invalid or will not be infringed by the manufacture, use, or sale of the drug for which the [ANDA] is submitted.'" *Id.* at 1569 (citing 21 U.S.C. § 355(j)(2)(A)(vii)(IV)).

Section 271(e)(2) can benefit certain generic drug companies as well as the public. Prior to the passage of section 271(e)(2), a generic drug company was required to wait until after a new drug patent expired before research and testing could take place for the generic form of the drug. As a result, the patent term was extended while the generic drug company completed requisite steps prior to marketing and sale of the generic form. The public, therefore, was unable to access lower cost drugs immediately at the expiration of a patent term. Congress responded by allowing generic drug companies to begin the process of bringing a generic form of a new drug to market more quickly; that is, before the patent term on the new drug had expired. In addition, "an applicant seeking approval of a generic drug [can] avoid the costly and time-consuming studies required for a pioneer drug." *Eli Lilly*, 496 U.S. at 676, 110 S.Ct. at 2692. Thus, both generic drug companies and the public would benefit as a result of the legislation.

As a way of protecting pioneer drug patent owners that are subject to the generic companies entering the market sooner, Congress "incorporated an important new mechanism designed to guard against infringement of patents relating to pioneer drugs." *Id.*, 496 U.S. at 676–77, 110 S.Ct. at 2692. An applicant is required to file one of four certifications in connection with its ANDA. Relevant to the present case is the paragraph IV certification, whereby a generic drug company certifies that the patent is invalid or will not be infringed.

"An applicant who makes the fourth certification is required to give notice to the holder of the patent alleged to be invalid or not infringed, stating that an application has been filed seeking approval to engage in the commercial manufacture, use, or sale of the drug before the expiration of the patent, and setting forth a detailed statement of the factual and legal basis for the applicant's opinion that the patent is not valid or will not be infringed."[9] *Id.*, 496 U.S. at 677, 110 S.Ct. at 2692 (citing 21 U.S.C. §§ 355(b)(3)(B), 355(j)(2)(B)(ii)). As the Supreme Court explained. however:

> This scheme will not work, of course, if the holder of the patent pertaining to the pioneer drug is disabled from establishing in court that there has been an act of infringement.... Thus, an act of infringement had to be created for ... ANDA ... proceedings. This is what is achieved by § 271(e)(2).... Quite obviously, the purpose of subsection[ ] (e)(2) ... is to enable

---

9. An applicant can also file one of the following three certifications: (i) that patent information has not been filed; (ii) that the patent has expired; and (iii) that the patent is due to expire on a specific date. Unlike a paragraph IV certification, the other three certifications do not result in an act of infringement. *Eli Lilly*, 496 U.S. at 677–78, 110 S.Ct. at 2692.

the judicial adjudication upon which the ANDA ... depend[s].

*Id.*, 496 U.S. at 678, 110 S.Ct. at 2692–93. While it is clear what Congress intended to accomplish in terms of substantive legal effects, it is unclear what effect, if any, Congress intended section 271(e)(2) would have on the personal jurisdiction of a defendant. The Court now examines the specific jurisdictional question in this case.

*Personal Jurisdiction in Maryland Based on Mylan's Actions Pursuant to Section 271(e)(2)*

■ The critical issue to be addressed in this Motion to Retransfer is whether the Maryland Court can properly assert personal jurisdiction over Mylan. As previously noted, Zeneca contends that jurisdiction in Maryland is proper because this action arises from Mylan's act of filing its tamoxifen ANDA with the FDA in Rockville, Maryland. Judge Smalkin disagreed, explaining that for "the reasons set forth by Judge Black in *Nichols v. G.D. Searle & Co.*, 783 F.Supp. 233, 236 (D.Md.1992), *aff'd,* 991 F.2d 1195 (4th Cir.1993), ... the government contacts rule prohibits consideration of Mylan's ANDA filing as a forum state contact for purposes of determining personal jurisdiction." *Zeneca,* Civil Action No S 96–1763, slip op. at 6.[10] Thus, Judge Smalkin determined that Mylan lacked sufficient "minimum contact" with Maryland to permit specific jurisdiction over Mylan. *Id.* The Court

disagrees, and for the reasons discussed below, find it proper to consider Mylan's ANDA filing with the FDA when examining Mylan's contacts with Maryland.

Relevant to the instant analysis is Maryland's long-arm statute. *Md.Code Ann.,* Courts and Judicial Proceedings, § 6–103. "When sitting in diversity, a federal court has the authority to exercise personal jurisdiction over a non-resident defendant if 1) an applicable state 'long-arm' statute confers jurisdiction and 2) the assertion of that jurisdiction comports with the constitutional requirement of due process. With respect to the first factor, the Court is bound by the interpretations and rulings of the Maryland state courts. Federal law, however, governs the second." *Nichols,* 783 F.Supp. at 236 (citations omitted). Maryland extends its in personam jurisdiction to the limits allowed by the United States Constitution. *Id.*[11]

Zeneca contends that jurisdiction over Mylan can be properly asserted pursuant to section 6–103(b)(3) of Maryland's long-arm statute. That statute states:

(a) Condition.—If jurisdiction over a person is based solely upon this section, he may be sued only on a cause of action arising from any act enumerated in this section.

(b) In general.—A court may exercise personal jurisdiction over a person. who directly or by an agent:

...

(3) Causes tortious injury in the State by an act or omission in the State.

**10.** Judge Smalkin also relied on *Nichols v. G.D. Searle & Co.,* 783 F.Supp. 233, 236 (D.Md.1992), *aff'd,* 991 F.2d 1195 (4th Cir.1993), in denying personal jurisdiction over the Defendant in *Pharmachemie,* Civil Action No. S 96–884, slip op. at 1–2. In that opinion, Judge Smalkin stated in pertinent part:

"The Court is of the opinion that, for the reasons stated by Senior Judge Black in *Nichols* ..., it would be inconsistent with both the Maryland long-arm statute and the United States Constitution for jurisdiction over this defendant to be premised under *Md. Cts. & Jud. Proc.Code Ann.* § 6–203(b)(3) upon its having filed an amended new drug application in Maryland, even though that might have constituted an act of infringement of the plaintiff's patent.

For the First Amendment reasons cited by Judge Black in *Nichols,* and in consideration of serious Fourteenth Amendment due process

problems apparent in exposing a defendant to the courts of a state that they have not realistically chosen to be in, but are in only because of the presence of a governmental agency with whom they must transact federal business in that State...."

**11.** Insofar as courts have primarily discussed the government contacts exception in connection with the District of Columbia, the Court notes that "in enacting the [District of Columbia] long-arm statute, D.C.Code 1973, § 13–423, Congress intended to provide District of Columbia courts with in personam jurisdiction equivalent in scope to that in effect in the neighboring states of Maryland and Virginia." *Rose v. Silver,* 394 A.2d 1368, 1369 (D.C.1978), *reh'g en banc denied,* 398 A.2d 787 (D.C.1979) (quoting *Environmental Research Int'l Inc. v. Lockwood Greene Engineers, Inc.,* 355 A.2d 808, 810 (D.C.1976) (*en banc* )).

Mylan's single act here resulted in patent infringement, which constitutes "tortious injury" in Maryland. This tort was committed by the filing of an ANDA and a paragraph IV certification pursuant to section 271(e)(2) in Rockville, Maryland. "When a defendant purposefully targets its conduct to cause harm in a forum state, it can reasonably expect to be haled into that state's courts. Thus, even a single contact may be sufficient to create jurisdiction, provided that the principle of 'fair play and substantial justice' is observed." *Nichols*, 783 F.Supp. at 237 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78, 105 S.Ct. 2174, 2184–85, 85 L.Ed.2d 528 (1985); *First American First, Inc. v. National Ass'n of Bank Women*, 802 F.2d 1511, 1516 (4th Cir.1986)). The Court finds that Mylan's act is sufficient to confer personal jurisdiction over Mylan in Maryland.

Although no court, other than the Maryland Court, has been presented with this precise jurisdictional question under section 271(e)(2), several courts comments on this section are instructive. For example, in *Genpharm Pharmaceuticals*, 796 F.Supp. at 876, the court was asked to decide whether the defendant's mailing notice of its paragraph IV certification into North Carolina was sufficient to support personal jurisdiction over the defendant in North Carolina. The court held that jurisdiction in North Carolina was not proper and that the mailing of the notice was not an integral part of the act of patent infringement. *Id.* at 876.

The court explained that the plaintiff was "trying to enforce its rights under [its] patent, *which was 'infringed' in Maryland."* *Id.*, 796 F.Supp. at 876 (emphasis added). The court then quoted section 271(e)(2) and commented that "[u]nder the clear language of the statute, *[plaintiff's] patent was 'infringed' when [defendant] filed its ANDA with the FDA in Rockville, Maryland,* not when it mailed notice to [plaintiff] in North Carolina." *Id.*, 796 F.Supp. at 876 n. 9 (emphasis added). Thus, the *Genpharm Pharmaceutical* decision suggests that jurisdiction

over the defendant in Maryland was proper based solely on the section 271(e)(2) statutory act of infringement occurring in Maryland.[12]

Similarly, the Court in *Abbott Laboratories v. Zenith Laboratories, Inc.,* 1995 WL 117984, at \*4 (N.D.Ill.1995), in rendering a jurisdictional decision denied defendant's motion to transfer the action from Illinois to New Jersey. Because the plaintiff filed its infringement action under 35 U.S.C. § 271(e)(2), the court held that *"the alleged infringing act, Defendant's filing of its ANDA application, technically occurred in Washington D.C.* [13] *..." Id.,* 1995 WL 117984, at \*4 (emphasis added). Moreover, "Plaintiff's patent infringement suit depends not on Defendant's manufacture of the drug, but on Defendant's filing of its ANDA." *Id.* Finally, the *Abbott* court relied on the United States Supreme Court's decision in *Eli Lilly* to reinforce its understanding of the place of occurrence of the patent infringement:

> Notably, when a patent holder brings an infringement suit pursuant to § 271(e)(2)(A), the patent holder often charges that the defendant's certification in its ANDA—that the patent holder's patent is invalid or not infringed—is in error.

*Id.* at \*4 (citing *Eli Lilly,* 496 U.S. at 669–77, 110 S.Ct. at 2688–92). Thus, the "act" that precipitates the filing of the infringement suit is the defendant's filing of a certification that the patent holder's claim is in error. This filing occurs in Maryland. Therefore, Maryland is a proper forum in which to adjudicate the instant action.

For the foregoing reasons, the Court finds that jurisdiction over Mylan is properly exercised in the Maryland Court. Mylan's contact that equates with the tort of patent infringement occurred in the forum state. Moreover, based upon the Court's interpretation of section 271(e)(2), the Court finds that the statute designates that the tort occurs in Maryland. Maryland's long-arm statute in connection with Mylan's contact with

---

**12.** The *Genpharm Pharmaceutical* court transferred the case to Maryland where defendant, who maintained an agent in Maryland, consented to jurisdiction. 796 F.Supp. at 877.

**13.** The FDA is actually located outside of the District of Columbia, in Rockville, Maryland.

Maryland are sufficient for Maryland to assert personal jurisdiction over Mylan consistent with due process.

### The Government Contacts Exception Is Inapplicable To the Present Question

 The Court now considers whether the government contacts exception applies to the facts of this case, which would remove from consideration Mylan's filing of an ANDA along with a paragraph IV certification when determining whether personal jurisdiction in Maryland is proper. The government contacts exception arose from decisions of the District of Columbia courts.[14] Its source lies in "the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry." *Environmental Research Int'l Inc. v. Lockwood Greene Engineers, Inc.*, 355 A.2d 808, 813 (D.C.1976) (*en banc*). The government contacts exception "exempts one from assertions of personal jurisdiction in the District, if the 'sole contact with the District consists of dealing with a federal instrumentality.'" *Rose v. Silver*, 394 A.2d 1368, 1373–74 (D.C.1978) (quoting *Environmental Research*, 355 A.2d at 813), *reh'g en banc denied*, 398 A.2d 787 (D.C.1979).

The exception exists to protect the citizenry's right to petition the government, free from fear of exposure to jurisdiction at the situs of the government, and to protect against the influx of actions that would be brought if there were no exception, based solely on non-resident defendants necessary and inevitable contacts with the District of Columbia and Maryland. *Rose*, 394 A.2d at 1373–74; *Environmental Research*, 355 A.2d at 813–14; and *Lex Tex Ltd., Inc. v. Skillman*, 579 A.2d 244, 247–48 (D.C.1990). *See also* Chad Allen Schiefelbein, *Accepting an Exception to the "Government Contacts Exception" of the District of Columbia's Long-Arm Statute*, 30 Valparaiso U.L.Rev. 1023 (1996).

Applying the government contacts exception in practice is subject to some uncertainty due to a lack of uniform judicial decisions concerning the scope of the exception. On one hand, the exception is said to apply to all contacts a non-resident defendant has with the federal government or government agency. *Environmental Research*, 355 A.2d at 813–14 (no jurisdiction found where sole activity in District was defendant's consultation with Environmental Protection Agency regarding grants). On the other hand, a later decision of the District of Columbia Court of Appeals held that the exception should only apply to those contacts that implicate a nonresident defendant's First Amendment rights. *Rose*, 394 A.2d at 1373–74 (government contacts exception not applicable and jurisdiction upheld based on agency relationship). *See also Nichols*, 783 F.Supp. at 242–43 (recognizing apparent conflict); *Lex Tex*, 579 A.2d at 247–49 (same), *Chase v. Pan-Pacific Broadcasting, Inc.*, 617 F.Supp. 1414, 1426–27 (D.D.C.1985) (finding no need to resolve apparent tension); *Naartex Consult. Corp. v. Watt*, 722 F.2d 779, 786–87 (D.C.Cir. 1983) (same); *cf. Wilfred American Education Corp.*, 1987 WL 10501, *4 (concluding that categorical governmental contacts rule, though not explicitly overruled, has not survived).

In a related Zeneca 516 patent infringement action, Judge Smalkin expressed concern over "exposing a defendant to the courts of a state that they have *not realistically chosen to be in*, but are in only because of the presence of a governmental agency with whom they *must transact* federal business in that State...." *Zeneca Ltd. v. Pharmachemie B. V.*, Civil Action No. S 96–884, slip op. at 2–3 (D.Md. June 17, 1996) (emphasis added). Because of the unique character of section 271(e)(2), the Court disagrees that Mylan has not "realistically chosen" to enter

---

14. Although the government contacts exception arose in the District of Columbia, it is the nonresident defendant's contacts with a governmental agency that determines whether the exception applies. The rationale of the exception applies equally to jurisdictional questions of a non-resident defendant's contacts with governmental agencies located in Maryland. The rationale was applied in Maryland in *Nichols*, 783 F.Supp. 233, and by Judge Smalkin in the two Zeneca actions, precisely because the relevant government agency was located in Maryland. The Court examines the exception in the present action, consulting the District of Columbia law for guidance.

Maryland. Furthermore, the Court is of the opinion that Mylan has *chosen* to conduct a particular kind of business transaction in Maryland, one which does not rise to the level of "must transact."

Mylan's 'contact' in this case is of a peculiar kind and character not addressed under previous government contacts exception cases—Mylan's contact with Maryland arises from a statutorily imposed act of patent infringement. This is not a case where the "defendant is forced to enter [the] forum to exercise his first amendment rights." *Chase*, 617 F.Supp. at 1428 (government contacts exception not applicable where client freely engages District of Columbia attorney to represent its interest to Federal Communications Commission—defendant is not required to enter District to obtain counsel). In hopes of gaining an earlier entry into the drug market, Mylan has chosen to take a calculated business risk by filing a paragraph IV certification. Any potential 'chilling' effect on the defendant filing with the FDA is nonexistent. Filing ANDA's with a paragraph IV certification is done in order to take advantage of a government sponsored incentive program that also imposes a statutory act of infringement on the applicant. All potential defendants may choose to file an ANDA without also committing an act of infringement simply by filing a certification under one of the other three options available in the statute. *See supra* note 9 and accompanying text.

Moreover, Mylan is not merely protecting its commercial or proprietary interests by filing an ANDA and paragraph IV certification. *See Lex Tex*, 579 A.2d. at 248 n. 9; and *Naartex*, 722 F.2d at 787. Part of the calculated business risk taken by Mylan is that Mylan will ultimately avoid liability for patent infringement. Mylan cannot, however, avoid being subject to suit for the resulting cause of action that accompanies the ANDA filing. Zeneca's cause of action arises directly out of Mylan's activities in Maryland. A party cannot expect to be absolutely immune from suit in a forum for a cause of action "arising directly" out of the defendant's activities in that forum. *Lex Tex*, 579 A.2d at 250 (government contacts exception not applicable where defendant lawyers had no first amendment interest stemming from the legal representation of a client before Patent Office). "The 'government contacts' principle does not extend so far." *Id.*

Mylan's minimum contact with Maryland is also more than merely a petition to the federal government or government agency. Section 271(e)(2) does more than merely provide, or require, that a defendant such as Mylan "contact" the government. The statutory act itself results in a tort, which is a 'contact' with the forum state that satisfies the exercise of personal jurisdiction under Maryland's long-arm statute. The statutory scheme enacted by Congress is designed to benefit potential defendant generic drug companies as well as the public. Congress also determined that it was necessary to protect those companies that initially introduced and patented drugs by providing a cause of action for such companies. Congress chose to define the tort as occurring simultaneously with the filing of the ANDA and paragraph IV certification so that the generic drug company who chooses to take advantage of the benefits of the statute does so with the knowledge that it may be haled into court precisely because its act of filing constitutes the tort of patent infringement.

Significantly, a non-resident defendant cannot file an ANDA and a paragraph IV certification without also being charged with the knowledge that the act of filing itself infringes the rights of the patent owner. By statutory definition, the tort has occurred at the time of filing. There is no unfairness to the defendant. "The argument that the defendant[ ] here cannot pursue their occupation except by coming to the District where the federal government agencies are situated, pushes the concept too far. Numerous activities can only be undertaken at certain locales. Pushed to its limit, the concept would render the 'government contacts' principle a blanket prohibition against assertions of personal jurisdiction in all cases involving interplay with the federal government, a proposition [the District of Columbia Court of Appeals] rejected in *Rose*." *Lex Tex*, 579 A.2d at 250 n. 15. Moreover, a defendant may choose not to file a paragraph IV certifi-

cation, and thus avoid the statutory effect of causing an intentional tort in Maryland.

Finally, Congress is assumed to have been aware of existing personal jurisdiction jurisprudence, including the effect a single act consisting of an intentional tort has on personal jurisdiction. Significantly, Congress chose not to adjust jurisdictional rules or otherwise provide for the government contact exception when enacting section 271(e)(2). Had Congress wished to account for the government contacts exception within the statute itself, it could have done so. In the absence of congressional directive, the Court applies the jurisdictional rules as they exist and finds that the government contacts exception does not apply in this case. Therefore, the Court finds that personal jurisdiction over Mylan in the Maryland Court is proper based on Mylan's filing of an ANDA and a paragraph IV certification.

### Zeneca's Motion to Stay Order of Retransfer and Request For Certification to the Federal Circuit Court of Appeals

■ Zeneca requests that the Court certify for appeal the jurisdictional question of the Court's Order retransferring the action to Maryland. 28 U.S.C. § 1292(a) & (b). "The questions to be considered by a district judge when deciding a motion for certification are (1) whether the [question] to be appealed involves a controlling question of law, (2) whether there is substantial ground for difference of opinion with respect to the resolution of the issue to be appealed, and (3) whether an immediate appeal from the district court's decision could materially advance the ultimate termination of the litigation." *Max Daetwyler Corp. v. R. Meyer*, 575 F.Supp. 280, 282 (E.D.Pa.1983); 28 U.S.C. § 1292(b).

■ The Court finds that the question of whether personal jurisdiction of Mylan in the Maryland Court is proper is a "controlling" question. If the Federal Circuit Court of Appeals determines that personal jurisdiction is not proper in Maryland, it is likely that the Court will direct dismissal from that District. Moreover, the Court believes that the question of the personal jurisdiction of a defendant who files an ANDA and a paragraph IV

certification pursuant to 35 U.S.C. § 271(e)(2), is an important question, the resolution of which will benefit courts determining the jurisdictional question, and parties in planning strategy for an action.

The Court also finds that there is a substantial ground for difference of opinion on the question to be certified. The question concerns whether a defendant who commits an intentional tort is immune from personal jurisdiction in Maryland if the only contact the defendant has with Maryland consists of the act of committing the tort through the defendant's application to a governmental agency. Although this Court has determined that personal jurisdiction does exist, the Court believes that a different opinion, based on the government contacts exception, may also be supported. In particular, the Court acknowledges Judge Smalkin's opinions in *Zeneca Ltd. v. Mylan Pharmaceuticals, Inc.*, Civil Action No. S 96–1763, slip op. (D.Md. January 3, 1997) and *Zeneca Ltd. v. Pharmachemie B.V.*, Civil Action No. S 96–884, slip op. (D.Md. June 17, 1996). Moreover, there is a lack of case law on the effect of the government contacts exception in section 271(e)(2) ANDA cases.

Finally, the Court finds that an immediate appeal from the district court's decision could materially advance the ultimate termination of this litigation. "[A] significant amount of time, funds, and effort will necessarily be expended by the parties and the court if this matter proceeds to resolution of the substantive merits of plaintiff's complaint. This case involves questions of patent law which will require extensive discovery, employment of expert witnesses, and investigation of numerous complex legal issues. A successful appeal from [the Court's] jurisdictional decision before trial would resolve this matter without this cost to all involved in both time and resources." *Max Daetwyler*, 575 F.Supp. at 282. In particular, the Court notes that Judge Smalkin is thoroughly familiar with the complex technological and legal issues presented in this patent case. Judge Smalkin has already presided over one lawsuit involving the same Zeneca patent. *Zeneca Ltd. v. Novopharm Ltd.*, Civil Action No. S 95–163 (D.Md. April 26, 1996) (holding Zene-

ca's 516 patent not invalid, enforceable and infringed under section 271(e)(2)), *aff'd,* 1997 WL 168318 (Fed.Cir.1997), and his familiarity with the issues will avoid potential piecemeal litigation of substantially similar, yet complex, cases.

Therefore, because all three elements of certification required by section 1292(b) have been met, the Court will certify the question of the applicability of the government contacts exception under 35 U.S.C. § 271(e)(2) for Interlocutory Appeal to the Federal Circuit Court of Appeals. The Order granting Zeneca's Motion to Retransfer this Action to the Maryland Court will be Stayed until resolution of this question or the applicable appeal period passes.

*Conclusion*

To summarize the Court's opinion, Mylan has committed an intentional tort in Maryland pursuant to 35 U.S.C. § 271(e)(2) by filing an ANDA and an accompanying paragraph IV certification with the FDA in Rockville, Maryland; the government contacts exception does not apply to Mylan's actions in this case; Mylan has sufficient minimum contact with Maryland to justify the exercise of personal jurisdiction over Mylan in the Maryland Court consistent with due process; and the personal jurisdiction question will be certified for appeal to the Federal Circuit Court of Appeals.

Accordingly, the Motion of Zeneca Ltd. to Transfer this Action to Maryland will be GRANTED. The Order To Retransfer this case to Maryland will be STAYED and the question of personal jurisdiction over Mylan will be certified for appeal.

An appropriate Order will be entered.

**ORDER**

AND NOW, this 13th day of May, 1997, it is hereby **ORDERED** that "Plaintiff's Motion To Retransfer This Case To The District Of Maryland And Certify To The U.S. Court Of Appeals For The Federal Circuit" (Document No. 31) is **GRANTED** as follows:

1. Plaintiff's Motion to retransfer this case to the District of Maryland is **GRANTED**;

2. The Retransfer Order is Hereby **STAYED** pending resolution of the certified question discussed below by:

(i) a party filing a petition for permission to appeal with the clerk of the Federal Circuit Court of Appeals within 10 days of the entry of this Order pursuant to *Fed. R.App. P.* 5(a) and *Fed. Cir.R.* 5; and

a) if the petition to appeal is **granted** the Clerk of Court shall promptly prepare and transmit to the clerk of the Federal Circuit Court of Appeals the appeal information sheet and a certified copy of the docket entries pursuant to *Fed. Cir.R.* 5(b) & (c); the trial court shall retain the record pursuant to *Fed. Cir. R.* 5(c); and the Retransfer Order is Stayed until resolution of the Appeal by the Federal Circuit Court of Appeals; or

b) if the petition to appeal is **denied** the Order Staying the Retransfer Order shall be thereby vacated, and the Clerk of Court is directed to retransfer this case forthwith to the United States District Court for the District of Maryland; or

(ii) if a party does not file the above-mentioned petition for permission to appeal within 10 days, the Clerk of Court is directed to retransfer this case forthwith to the United States District Court for the District of Maryland.

3. Plaintiff's Motion requesting certification is **GRANTED**. The Court finds that the question of personal jurisdiction in the Maryland Court based solely on the defendant's submission of an ANDA and filing of a paragraph IV certification, is a controlling question of law as to which there is a substantial ground for difference of opinion and that an appeal from this Order may materially advance the ultimate termination of the litigation. The within Order dated May 13, 1997 is hereby certified to the United States Court of Appeals for the Federal Circuit for review pursuant to 28 U.S.C. § 1292(a) & (b).

Mylan has only one contact with the forum state Maryland: Mylan's act of filing its tamoxifen ANDA with the FDA in Rockville, Maryland pursuant to 35 U.S.C. § 271(e)(2). Mylan's contact under the statute is a statutory act of patent infringement. This court

has determined that Mylan's contact with Maryland is sufficient to justify the exercise of specific jurisdiction over Mylan in the District Court for the District of Maryland pursuant to Maryland's long-arm statute. *Md. Code Ann.* § 6–103(b)(3). The controlling question of law certified to the Federal Circuit Court of Appeals is whether, in light of the government contacts exception, personal jurisdiction over Mylan in the District Court for the District of Maryland is supported by Mylan's contacts with the FDA in Rockville, Maryland pursuant to 35 U.S.C. § 271(e)(2).[15]

---

**15.** The Court has adhered to Third Circuit Local Appellate Rule 5.1 which requires that an Order certified for appeal pursuant to 28 U.S.C. § 1292(b) "shall state concisely the 'controlling question of law.'" *3rd Cir. LAR* 5.1. The local Federal Circuit Rules are referenced, where applicable, as indicated in the Order.